(No. 49983.

*In re* JOSEPH L. DOMBROWSKI, Attorney,
Respondent.

*Opinion filed May 16, 1978.*

446

KLUCZYNSKI, J., took no part.

Jack Toporek, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George B. Collins, of Collins & Amos, of Chicago, for respondent.

MR. JUSTICE RYAN delivered the opinion of the court:

On June 23, 1976, the Administrator of the Attorney Registration and Disciplinary Commission filed a complaint charging Joseph L. Dombrowski with conduct unbecoming an attorney, which tends to defeat the administration of justice and bring the legal profession into disrepute. The complaint alleged that he settled a personal injury case contrary to the client's wishes and signed her name to the release and settlement draft without her authorization. In addition, the complaint alleged that he falsely represented to the inquiry panel that he had acted pursuant to a valid power of attorney signed by his client, while, in reality, he had actually signed her name to the power of attorney. The hearing panel concluded that the evidence sustained the allegations of the complaint. Its findings and recommendation of 18 months' suspension from practice were affirmed by the Review Board.

The acts complained of arose from Dombrowski's representation of Virginia Finley. In early February 1972, Mrs. Finley was allegedly injured while a passenger on an Amtrak train traveling over track owned by the Louisville

and Nashville Railroad. She claimed that while she was in the washroom, the train had passed over a rough section of track and she was jolted, resulting in her injuries. A short time later, she entered into a verbal agreement with Dombrowski on a one-third-contingency-fee basis to prosecute a personal injury claim against the railroad. Dombrowski sent her to two doctors and entered into negotiations with the Louisville and Nashville Railroad. In June or July 1973, a representative of the railroad came to his office and offered $1,000 to settle the case. Dombrowski telephoned Mrs. Finley and notified her of the offer. On his recommendation, she agreed to the settlement. The railroad's adjuster assented and left releases with Dombrowski to be signed by Mrs. Finley. In July 1973, Dombrowski requested that Mrs. Finley come to his office to discuss the settlement. She did so, and Dombrowski, for the first time, explained that after paying medical bills and deducting his fee, she would only receive $244. Mrs. Finley was not satisfied. She believed she would receive the entire $1,000, and refused to sign the release, stating that she wanted more money. Dombrowski informed her that if she was unhappy with the offer, he would file suit upon her payment of $200 for court costs. She declined, stating that she did not have $200, nor would she have $200 in the future.

Subsequent to this meeting, Dombrowski sent Mrs. Finley several postcards which went unanswered. He also called her and asked what she wanted him to do about the case. According to him, she refused to give any instructions. On October 15, 1973, Dombrowski signed her name to the release and sent it to the railroad. He subsequently received a settlement draft of $1,000 payable to himself and Mrs. Finley, and also signed her name on the back of the draft before depositing it in a fiduciary account. He failed to notify Mrs. Finley of the recovery, but later transferred the funds to an interest-bearing account.

On February 7, 1974, Mrs. Finley filed a complaint against Dombrowski with the attorney disciplinary system. On February 22, 1974, Dombrowski sent a letter to the Attorney Registration and Disciplinary Commission explaining that Mrs. Finley agreed to settle for $1,000 on his recommendation but, after settlement was effected, complained bitterly and refused to accept distribution of her portion of the proceeds. On July 19, 1974, Dombrowski appeared before a panel of the Inquiry Board. In response to questioning, Dombrowski asserted that he had signed Mrs. Finley's name to the release and settlement draft pursuant to a power of attorney signed by Mrs. Finley. He showed the panel copies of three different documents which constitute his "take-in" package for new clients: A statement concerning the nature of the claim and that the client had not been solicited, a retainer agreement for a one-third contingent fee, and a power of attorney. The retainer agreement and the power of attorney were dated February 14, 1972, and all three documents contained the purported signatures of both Dombrowski and Mrs. Finley. After the hearing, the Administrator's office asked to see the original power of attorney. As Dombrowski later testified, he examined the original and realized for the first time that it was signed not by Mrs. Finley, but by himself. In April 1975 he notified the Attorney Registration and Disciplinary Commission of this fact and also appended a report of a polygraph test indicating he had been previously unaware that he had signed Mrs. Finley's name.

Dombrowski was the only witness to testify before the Hearing Board. He testified that Mrs. Finley orally agreed to the settlement during their telephone conversation in June or July 1973, but later expressed dissatisfaction when she learned that she would only receive $244 of the $1,000 settlement. He stated that she refused to sign a release or give him further instructions. He indicated that

he had concluded from the facts that there was no liability and that from the medical reports $1,000 was a sufficient amount for the injuries. According to Dombrowski's testimony, he examined Mrs. Finley's file in October 1973 and noticed the power of attorney which he assumed was signed by her. Even though he knew she was dissatisfied with the settlement offer, he believed that he was authorized to sign her name to the release and draft by the power of attorney. He further stated that he only acted to protect her interests since the statute of limitations was to run out in February 1974.

Dombrowski also attempted to explain his misrepresentation to the Inquiry Board. He asserted that he only became aware that Mrs. Finley had not signed the power of attorney when the Administrator asked to see the original copy. The polygraph report he submitted to substantiate this fact was not admitted into evidence by the board. Upon questioning, Dombrowski stated that he must have signed Mrs. Finley's name to the documents at some time after February 14, 1972, and before he appeared before the inquiry panel, although he was unable to recall the exact date.

In its report, the Hearing Board held that Dombrowski had acted improperly by settling contrary to the wishes of his client and in signing her name to the release without authority. However, the board specifically held that the Administrator had failed to prove that Dombrowski prepared the power of attorney in order to mislead the Inquiry Board, or that he knew Mrs. Finley had not signed it when he presented it to the board. It noted that Dombrowski had specialized in the personal injury field for 10 years with no other charge of impropriety. It recommended a suspension from practice for 18 months. In August 1977 the Review Board affirmed the Hearing Board.

In his brief to this court, Dombrowski characterizes

this case as a disagreemnt over the division of the settlement. He argues that Mrs. Finley initially agreed to the settlement in June or July 1972 and only disagreed over the amount of her net recovery. We disagree with Dombrowski's interpretation of this case. This is not a situation where a lawyer settles pursuant to authorization by the client and later has a disagreement over distribution. While Mrs. Finley initially agreed to the settlement, the record clearly shows that once she learned what her net recovery would be, she refused to settle or sign the necessary release. We have previously held that unauthorized settlement and endorsement of releases or drafts without authority is improper. (See *In re Di Bella* (1974), 58 Ill. 2d 5; *In re Agin* (1970), 45 Ill. 2d 126; *In re Gavin* (1961), 21 Ill. 2d 237; *In re Ashbach* (1958), 13 Ill. 2d 411.) While Dombrowski's assertion that Mrs. Finley was difficult to deal with and unreasonable in refusing settlement may be correct, this is no excuse for his actions in settling and signing release documents in direct contradiction to her wishes.

In addition, we condemn Dombrowski's reliance on the power of attorney as authority for his actions. Whether or not Dombrowski believed that Mrs. Finley had signed it was irrelevant; her actions clearly indicated that the proposed settlement was not satisfactory to her. In light of this knowledge, even if the power of attorney were valid, his acts in signing her name to the release and settlement draft were clearly an abuse of the authority conferred by the power of attorney. As was stated in *In re Gavin* (1961), 21 Ill. 2d 237, 245:

"Respondent was dealing with a difficult person who was not satisfied with the proposed settlement of her claim. It was extremely unwise for him to find refuge in the disputed power of attorney and undertake to force Mrs. Tree to accept the settlement he had made for her.

Respondent's explanation for the power of attorney in this case is a plausible one, but it is a practice that should be avoided since it is so readily susceptible of abuse."

That case is also a less serious situation than the present case. In *Gavin,* there was substantial evidence that the client had, in fact, signed the power of attorney. In the present case, Dombrowski concedes that Mrs. Finley never signed it and was unaware of its existence.

Dombrowski also asserts that his actions were motivated by a good-faith attempt to safeguard Mrs. Finley's interest, since the statute of limitations was to run out in February 1974. The record clearly shows, however, that when Dombrowski executed the release in October 1973 almost four months remained before the statute of limitations would have run. As the Administrator and the Hearing Board pointed out, he had the option of withdrawing from the case, filing suit, referring Mrs. Finley to another attorney, or filing suit and then withdrawing from the case. Any of the actions would have protected Mrs. Finley's rights; instead, he chose to act directly contrary to Mrs. Finley's wishes. In light of this flagrant disregard of his client's rights and his unauthorized actions in signing her name to the various documents, especially the power of attorney, we must agree that Dombrowski breached his professional obligations and engaged in conduct unbecoming a member of the legal profession.

In his brief, Dombrowski also contends that the 18-month suspension recommended by the Hearing Board and Review Board is inappropriate in view of the nature of and motive for his behavior. He points out that no other charges have been filed against him in the 10 years he has been practicing law and also emphasizes that he did not misuse any of the funds and thus Mrs. Finley has suffered no loss.

The Administrator cites *In re Agin* (1970), 45 Ill. 2d

126, in support of his request for an 18-month suspension. In that case, the attorney settled a personal injury claim for approximately one-half of the amount desired by his client without the client's knowledge or consent. Several years later, the client discovered that the case had been settled. He then demanded and received from the attorney the entire sum he had originally requested. At the disciplinary hearing, the attorney testified that he paid the client the entire sum demanded because the client attempted to blackmail him by threatening to allege forgery on settlement checks. This court there held that the attorney's testimony was unworthy of belief, and suspended him from practice for one year.

Several other cases, while not identical, are sufficiently analogous for comparison with the instant case on the question of appropriate discipline. In *In re Gavin*, cited above, one count of the complaint charged the attorney, Gavin, with effecting settlement, executing releases, and signing a settlement draft without the consent or authority of his client, Mrs. Florence Tree. Gavin claimed that after Mrs. Tree refused to accept the settlement offer, he settled the case pursuant to a written power of attorney. Although Mrs. Tree testified she had not signed a power of attorney, she admitted the signature looked like hers, and it appears that it was validly executed. Gavin testified that, after he received the settlement draft, he asked Mrs. Tree to come to his office. She failed to do so, he sent her a check for her share of the proceeds, and she returned it. According to Mrs. Tree, several months after she refused to settle, the tortfeasor's insurer notified her that the case had been settled, releases signed, and the draft cashed. This court noted that Gavin's testimony was corroborated by several witnesses and held that, while he had acted improperly, he had not engaged in conduct involving moral turpitude. Thus, the court stated that censure was appropriate discipline.

In *In re Di Bella* (1974), 58 Ill. 2d 5, the client, Miss McGinnis, refused a $22,000 settlement offer for personal injury. Her attorney, Di Bella, subsequently signed her name to releases, endorsed a draft with both his signature and her signature, and cashed it, all without her knowledge or consent. Di Bella failed to notify her of the settlement and, in fact, misappropriated the proceeds. When she later discovered what had occurred, she demanded $33,772 from Di Bella. He tendered a check for $17,871, representing the settlement amount less his attorney's fee, and Miss McGinnis filed a complaint with the Chicago Bar Association. In that case, this court ordered the attorney suspended from practice for three years.

In comparing these cases with the instant case, we believe that the seriousness of Dombrowski's conduct falls somewhere between the misconduct in *Gavin* and that in *Di Bella*. While Dombrowski did not misappropriate any of the settlement proceeds, it is clear that he settled contrary to his client's wishes. He signed her name to three different "take-in" documents, including a power of attorney without authority, and then, purporting to rely on the power of attorney, also signed her name to a release and settlement draft. We also note that the signatures of Mrs. Finley's name on the "take-in" documents, release and settlement drafts appear to have been written in different handwriting than his own signature on the same documents. In fact, his own signature and the signature purporting to be Mrs. Finley's are written in different color ink on the take-in documents.

We believe that the respondent's misconduct in flagrantly disregarding his client's instructions and his unauthorized signing of her name to various documents, including the power of attorney and release, warrants suspension from practice for a period of 1 year. We again wish to emphasize, as this court did in *Gavin*, that a power of attorney, even if validly executed by the client, may not

be used by the attorney to circumvent the expressed wishes of the client by forcing settlement. Accordingly, we suspend the respondent from the practice of law in this State for a period of 1 year.

*Respondent suspended.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.