(No. 65345.—

*In re* THOMAS J. GORDON, Attorney, Respondent.

*Opinion filed May 18, 1988.*

STAMOS, J., took no part.

Daniel Drake, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Zimmerly, Gadau, Selin & Otto, of Champaign (John Gadau, of counsel), for respondent.

JUSTICE WARD delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a two-count complaint on February 27, 1986, charging the respondent,

Thomas J. Gordon, with violating the Illinois Code of Professional Responsibility. Count I of the complaint charged that the respondent, while representing an estate on behalf of the public administrator, made an unauthorized loan out of estate funds to a business associate. Count II charged him with filing a false and misleading final account of the estate in the probate division of the circuit court of Champaign County. The Hearing Board of the ARDC found against the respondent on both counts and recommended that he be suspended for two years from the practice of law. The Review Board affirmed the Hearing Board's finding and recommendation, and the matter comes to this court upon the respondent's exceptions to the Review Board's decision.

The respondent is 45 years of age, the father of three children and was admitted to the bar in 1968. In late 1982, he was retained by John Bresee, the Champaign County public administrator, to represent the estate of Ruth M. Martin, who died on April 21, 1982. The estate consisted of $55,684.24 in two money market accounts and $6,243.73 in a personal checking account. On March 14, 1983, the respondent withdrew $3,500 from the money market accounts of the estate to pay Martin's real estate taxes and he transferred the balance of the estate funds to an estate checking account.

Shortly thereafter, Robert Trost, a friend and business associate, informed him that he was interested in purchasing a house in order to rehabilitate it and then resell it. According to the respondent, he told Trost that he "would make an investment in this property for the [Martin] estate of $15,000." The respondent told Trost that he would lend him the $15,000 if he would sign a note and mortgage. Trost agreed and consented to pay interest at 13% to 13½%. The respondent acknowledged that at that time he had guaranteed the payment of certain notes, not directly concerned here, on which Trost

was primarily liable to the extent of approximately $25,000.

The respondent drew two checks on the estate account for $175 and $15,000. The first check, dated March 14, 1983, and in the amount of $175, was made payable to Trost. The respondent first testified that the $175 was to cover fees for an appraisal of the house that Trost sought to purchase. The respondent later testified, however, that he "guess[ed]" that it was to pay Trost for hauling trash out of Ruth Martin's apartment. The second check, dated March 16, 1983, and in the amount of $15,000, was made payable to "American Savings," the owner of the property Trost was to purchase. Neither check was entered on the estate's checkbook register. The respondent acknowledged that he did not obtain approval from the probate court to disburse the funds, nor did he inform Bresee of it.

Respondent testified that before he prepared the $15,000 check, he prepared a note and mortgage for Trost to execute and left the documents with his secretary. Trost said he picked up the check, note and mortgage and told the respondent's secretary that he would return the executed note and mortgage after he obtained the signature of a business associate, Leroy McCall, who apparently would be a co-maker. Trost delivered the check to American Savings to satisfy a lien against the property. He never executed the note and mortgage, although the respondent claims he asked Trost to do so on several occasions.

On September 27, 1984, the respondent filed a "First and Final Account" of the estate of Ruth M. Martin with the probate court. The report failed to disclose the $15,175 disbursed to Trost and erroneously included it in stating the amount available for disbursement. The respondent subsequently informed his law partners of the disbursements. The firm obtained a loan from a bank,

and the amount borrowed was deducted from the respondent's share in the undistributed-profits account of the partnership. Using the loan funds, on November 2, 1984, the respondent reimbursed the estate $5,000, and on January 21, 1985, he deposited another $10,000 into the estate account.

After the respondent's law partners brought the incidents to the attention of the ARDC, on February 27, 1986, the Administrator filed a two-count complaint against the respondent. The first count charged that the respondent, in making an unauthorized loan from the Martin estate, engaged in conduct that is prejudicial to the administration of justice in violation of Rule 1—102(a)(5) of the Code of Professional Responsibility (107 Ill. 2d R. 1—102(a)(5)); accepted employment when the exercise of his professional judgment on behalf of his client might be affected by his own business or personal interest in violation of Rule 5—101(a) (107 Ill. 2d R. 5—101(a)); violated canon 6 by failing to act competently (107 Ill. 2d R. 6—101 et seq.); violated Rule 9—102(a) by failing to keep all funds belonging to a client in an identifiable trust account (107 Ill. 2d R. 9—102(a)); prejudiced or damaged his client during the course of the professional relationship in violation of Rule 7—102(a)(3) (107 Ill. 2d R. 7—102(a)(3)); and engaged in conduct that tends to bring the courts and the legal profession into disrepute.

Count II of the complaint charged that the respondent filed a false and misleading final account of the Martin estate in that the report, *inter alia*, did not disclose the loan made to Trost out of the estate funds. The Administrator charged that by filing the report the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 1—102(a)(4) (107 Ill. 2d R. 1—102(a)(4)); engaged in conduct that is prejudicial to the administration of justice in vio-

lation of Rule 1—102(a)(5) (107 Ill. 2d R. 1—102(a)(5)); violated Rule 7—102(a)(3) by concealing or knowingly failing to disclose that which he is required by law to reveal (107 Ill. 2d R. 7—102(a)(3)); violated Rule 7—102(a)(5) by knowingly making a false statement of fact (107 Ill. 2d R. 7—102(a)(5)); and engaged in conduct that tends to bring the courts and the legal profession into disrepute. The respondent's answer did not contest the material factual allegations of the complaint but only the conclusions that the Administrator drew from them. He claimed before the hearing panel that he was seeking only to benefit the estate through a loan to Trost at a very favorable rate of interest.

The hearing panel found that the Administrator had established by clear and convincing evidence that the respondent was guilty of the violations set out in count I of the complaint and that under count II the Administrator had shown that the respondent had violated Rule 7—102(a)(3) and engaged in conduct that tends to bring the courts and the legal profession into disrepute. The panel recommended that the respondent be suspended for two years from the practice of law. The respondent filed exceptions with the Review Board, which adopted the findings of the Hearing Board and concurred in recommending a two-year suspension. The matter is before us on the respondent's exceptions to the Review Board's recommendation.

The facts alleged are not challenged and the issue is what sanction should be imposed. The recommendations of the Boards are certainly to be given consideration, but the responsibility for determining a proper sanction rests with this court. *In re Wina* (1984), 103 Ill. 2d 334, 337.

In recommending a suspension for two years, the Hearing Board considered that the respondent's actions were intentional, dishonestly motivated and exposed his client to great financial harm.

The respondent argues that the Review Board's recommendation is overly harsh, saying that his conduct was unintentional, and simply a mistake. He further says that he did not benefit financially and that, of his own volition, he brought the misconduct to the attention of his law partners and made arrangements to make restitution to the estate before disciplinary proceedings were initiated against him.

Considering the evidence, however, both the Hearing and Review Boards properly rejected the respondent's contention that his actions were unintentional and without dishonest motivations. As this court observed in *In re Schwartz* (1972), 51 Ill. 2d 334, 336, "[m]otive and intent are rarely the subject of direct testimony; they must ordinarily be inferred from conduct and from the circumstances under which that conduct took place." This court has also held that "[w]here the question is the credibility of witnesses, resolution of conflicting testimony, or other such fact-finding judgments, the hearing panel should be afforded a good deal of deference." *In re Hopper* (1981), 85 Ill. 2d 318, 323.

Dishonest motives are a proper factor to consider in determining sanctions (*In re Ushijima* (1987), 119 Ill. 2d 51, 58; *In re Clayton* (1980), 78 Ill. 2d 276, 283), but we consider that the Administrator's contention that a two-year suspension is warranted does not give sufficient recognition to mitigating circumstances that are present. The respondent, through his firm, voluntarily brought the misconduct to the attention of the ARDC, fully cooperated with the ARDC in its investigation and made full restitution to the estate. Too, the record shows that this is the first instance of professional misconduct by the respondent. He has been active in campaign drives for several charities and has made contributions of time and effort in legal matters in which he served *pro bono*.

The purpose of attorney disciplinary proceedings is to safeguard the public interest and maintain the integrity of the legal profession. (*In re Levin* (1979), 77 Ill. 2d 205, 211.) Uniformity in the imposition of sanctions in disciplinary cases should be sought (*In re Clayter* (1980), 78 Ill. 2d 276, 283), but it must be recognized that an undeniable consideration is that each proceeding presents a different factual situation which must be judged individually. *In re Hopper* (1981), 85 Ill. 2d 318, 324.

Considering the nature of the conduct and the mitigating factors, we judge that suspension of the respondent from the practice of law for 18 months will be an appropriate sanction.

*Respondent suspended.*

JUSTICE STAMOS took no part in the consideration or decision of this case.