(No. 65692.—

*In re* IVAN H. TEPPER, Attorney, Respondent.

*Opinion filed December 15, 1988.—Rehearing denied January 30, 1989.*

MORAN, C.J., and STAMOS, J., took no part.

Robert M. Merrick, Jr., of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Ivan H. Tepper, of Ori, Tepper, Fox & Maley, of Waukegan, respondent *pro se.*

David A. Novoselsky, of Chicago, for respondent.

JUSTICE MILLER delivered the opinion of the court:

On March 6, 1985, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a one-count complaint against respondent, Ivan H. Tepper, charging him with professional misconduct in his handling of a client matter. A panel of the Hearing Board found against respondent on the charges of the complaint and recommended that he be suspended from the practice of law for six months. Respondent filed, with the Review Board, exceptions to the Hearing Board's report and recommendation. The Review Board concurred in the Hearing Board's report and recommendation, and respondent then filed exceptions with this court. See 107 Ill. 2d R. 753(e)(5).

Respondent was admitted to the practice of law on November 17, 1969, and at the time of this matter was engaged in a general law practice with an emphasis in litigation. Since 1977, one of respondent's clients was Peter Vole, Jr., whom respondent had represented in a number of matters and with whom respondent had become social friends. In January 1982, Vole referred his girlfriend, Janet Wiswald (formerly Janet Hoffelt), to respondent, and Wiswald retained respondent to represent her in a post-dissolution proceeding brought by Wiswald's former husband, Joseph Hoffelt. (Hoffelt v. Hoffelt (Lake Co. Cir. Ct.), No. 80—D—2179.) Respondent successfully represented Wiswald in this matter.

In the fall of 1982, Wiswald and Hoffelt decided that Wiswald would buy out Hoffelt's interest in the former marital home and assume the expenses associated with it. Wiswald again retained respondent, this time to represent her in negotiating an agreement with her former husband. The parties reached an agreement, and an order reflecting that agreement was entered on December

20, 1982. The order provided that Wiswald would pay Hoffelt $10,000 in 10 monthly installments of $1,000 each, in exchange for which Hoffelt would deed his interest in the former marital home to Wiswald. Respondent was to hold in escrow a quitclaim deed relinquishing Hoffelt's interest to Wiswald and record the deed upon Wiswald's payment of the $10,000. Hoffelt signed a quitclaim deed naming Wiswald as the sole grantee and delivered the deed to respondent as the escrowee.

During 1982 and the first half of 1983, Wiswald and Vole were living together at the former marital residence in Lake Villa, Illinois. Wiswald worked part-time for Vole in various businesses, earning approximately $50 a week. After the order of December 20, 1982, Vole began making mortgage payments on the home, as well as paying the utility bills and other expenses associated with the property. Because Wiswald did not have the $10,000 necessary to purchase her ex-husband's interest in the house, Vole provided Wiswald with $7,000 to make the first seven payments. Wiswald deposited the $7,000 in her checking account and then paid $6,000 of it to Hoffelt as the payments became due. The seventh scheduled payment, however, was missed by agreement of Wiswald and Hoffelt. Wiswald retained the $1,000 for her own use, although Vole was unaware of this fact.

During the same period in 1982 and 1983, Wiswald and Vole broke off and then reestablished their relationship several times, and, at one time, they were engaged to be married. During their relationship, they were friends of and frequently socialized with respondent and his wife. In February 1983, while Wiswald and Vole were engaged, Wiswald instructed respondent to add Vole's name to the quitclaim deed from Hoffelt that respondent held in escrow. Respondent agreed, added Vole's name to the deed, and initialed the change.

In August 1983, Wiswald and Vole were not getting along and Wiswald went to Arkansas with her mother and daughter. On August 18, while Wiswald was in Arkansas, Vole delivered to Hoffelt's attorney his business check for $3,000, which Vole believed would pay off the $10,000 owed to Hoffelt. On the evening of August 18, Wiswald received a telephone call from her sister informing her that Vole was holding an open house at the property in Lake Villa. Wiswald then called Hoffelt, who told her that his attorney had received a $3,000 check from Vole and that he did not know whether he should accept it. Wiswald asked Hoffelt not to do anything with the check until she returned, and Hoffelt agreed. Wiswald then telephoned respondent that same evening and told him that she and Vole were not getting along and that she believed Vole was "up to something." Wiswald instructed respondent not to do anything regarding the house until she returned from Arkansas.

The next day, August 19, Vole left with respondent's secretary a copy of his check for $3,000 and a receipt for the check from Hoffelt's attorney. Vole also told the secretary to have respondent record the deed held in escrow. Respondent called Vole and asked him whether all the money owed to Hoffelt had been paid. Vole stated that it had, not knowing that Wiswald had reserved the $1,000 for her own use. Respondent did not confirm Vole's statement with Wiswald, or Hoffelt, or Hoffelt's attorney. On August 19, 1983, respondent recorded the quitclaim deed transferring Hoffelt's interest in the house to Wiswald and Vole as joint tenants.

When Wiswald returned from Arkansas, she ordered Vole out of the house. Vole then retained counsel, other than respondent, and sued Wiswald for partition of the property. (Vole v. Hoffelt [Wiswald] (Lake Co. Cir. Ct.), No. 83—CH—621.) Wiswald retained counsel, other than respondent, to defend the suit, and she also filed a com-

plaint with the ARDC regarding respondent's conduct. The partition suit was ultimately settled by Vole and Wiswald.

The Administrator filed a complaint against respondent which alleged that by recording the deed at Vole's request, and against his client's instructions, respondent had violated the following rules of the Illinois Code of Professional Responsibility (107 Ill. 2d R. 1—101 *et seq.*): Rule 1—102(a)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); Rule 5—107(a) (failing to avoid influence by one other than the client); Rule 7—101(a)(1) (failing to seek the lawful objectives of his client); and Rule 7—101(a)(3) (intentionally causing prejudice or damage to his client during the course of the professional relationship).

At respondent's hearing before a panel of the Hearing Board, the main issues in dispute concerned whether Wiswald had authorized respondent to add Vole's name to the quitclaim deed, and whether Wiswald had instructed respondent not to do anything with the house until her return from Arkansas. Wiswald testified that she never told respondent to insert Vole's name on the deed. Respondent, Vole, respondent's wife and Wiswald's former best friend all testified to the contrary.

Wiswald further testified that she had instructed respondent not to record the deed in her absence. She stated that, when she found out about Vole's actions while she was in Arkansas, she immediately called respondent on August 18, 1983. According to Wiswald, she told respondent during their phone conversation that she was not getting along with Vole and that she felt he was "up to something," and that respondent should do nothing with the house before she returned. Wiswald's mother confirmed her daughter's story, stating that she was able to overhear Wiswald's side of the phone conversation with respondent. Respondent admitted that he

received a phone call on the evening of August 18, 1983, from Wiswald, but stated that she only asked how Vole was. Respondent testified that, after talking with Wiswald, he called Vole that same night and asked whether everything was all right between Vole and Wiswald. According to respondent, Vole replied that everything was fine; Vole, however, testified that he did not remember receiving the telephone call from respondent.

Based on the evidence presented, the Hearing Board found that Wiswald had authorized respondent to add Vole's name to the deed, but that she had told respondent to do nothing with respect to her home, and that respondent, therefore, had acted contrary to his client's instructions by recording the deed. The Board accepted Wiswald's account of the August 18 phone call to respondent, and found that respondent's version of the conversation lacked credibility. The Board further stated that respondent had violated his escrow duties to Hoffelt, both by adding Vole's name to the deed without Hoffelt's authorization and by recording the deed before Hoffelt had received the entire $10,000 owed him. The Board explained, however, that because the breaches of respondent's escrow duties to Hoffelt were not charged in the complaint, those breaches would only be considered in aggravation in recommending sanctions. The Board also found that respondent had harmed his client's interests and benefited Vole's interests so that he would continue to receive business from Vole. The Board finally found that respondent's actions had harmed Wiswald because she had to retain counsel, pay substantial legal fees and eventually lost money in settling the partition suit brought by Vole. The Hearing Board then concluded that respondent's conduct violated Rule 1—102(a)(4), Rule 5—107(a), Rule 7—101(a)(1) and Rule 7—101(a)(3), and recommended that respondent be suspended from the practice of law for six months.

Respondent filed exceptions to the Hearing Board's report. The Review Board concurred in the Hearing Board's findings of fact, conclusions of law and recommendation of a six-month suspension.

Respondent then filed exceptions to the report and recommendation of the Review Board. In this court, respondent raises issues concerning service of process, delay in obtaining a hearing, exclusion of evidence, weight of the evidence, the appeals process in attorney disciplinary cases and the recommended discipline. We now consider each of these issues in turn.

Initially respondent raises a threshold jurisdictional question regarding service of process. Respondent contends that ARDC Rule 4.5 (Dis. Com. R. 4.5 (now Dis. Com. R. 215 (1988))), which allows for personal service of process by members of the Administrator's staff, is invalid in that it conflicts with Supreme Court Rule 765. Respondent states that, because he was served by an investigator of the ARDC, service was improper in his case. Respondent reasons that our Rule 765 (107 Ill. 2d R. 765) controls service of process in disciplinary proceedings. Rule 765 states that "[s]ervice of process and notices in proceedings under these rules may be made in any manner authorized by the Civil Practice Law [Ill. Rev. Stat. 1985, ch. 110, par. 2—101 *et seq.*], or rules of this court." Respondent then states that under this court's Rule 102(a) (107 Ill. 2d R. 102(a)) and under the version of section 2—202(a) of the Civil Practice Law in effect when he was served (Ill. Rev. Stat. 1985, ch. 110, par. 2—202(a)), personal service of process could have only been made by (1) sheriffs, (2) other authorized persons (*e.g.*, coroners, private detectives), or (3) private persons appointed by the court upon motion. Thus, according to respondent, our Rule 765 authorizes only these categories of persons to serve process. Respondent continues that our Rule 751(e)(1) (107 Ill. 2d R. 751(e)(1))

prohibits the ARDC from making rules inconsistent with rules of this court, in this case Rule 765. Respondent then concludes that ARDC Rule 4.5, which allows for service of process by members of the Administrator's staff, is invalid because it permits service of process by persons not authorized by Rule 765 and is thus inconsistent with Rule 765. Respondent admits that, as private persons, members of the Administrator's staff could validly serve process, but argues that they would first have to be appointed by the court upon motion. Thus, respondent asserts that because he was served with a complaint by a member of the Administrator's staff who was not appointed by the court upon motion, he was improperly served and that the Hearing Board was without jurisdiction to hear his case. Respondent does not deny that he received the complaint, nor does he claim any prejudice caused by the alleged improper service.

We cannot agree with respondent's contention that ARDC Rule 4.5, providing for service of process by a member of the Administrator's staff, is inconsistent with our Rule 765. Rule 765 states that, in disciplinary cases, service of process may be made by the methods prescribed under the Civil Practice Law or rules of this court. The use of the word "may" is permissive rather than mandatory. (See Black's Law Dictionary 883 (5th ed. 1979); see also *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 298.) Rule 765, then, authorizes the ARDC to effect service of process in the same manner as in civil cases, but is not intended to provide the exclusive means by which service may be made. Thus, Rule 765 affords some discretion to the ARDC in formulating its rules regarding service of process. Moreover, by allowing for service of process by a member of the Administrator's staff, ARDC Rule 4.5 furthers the purposes of our Rule 766 (107 Ill. 2d R. 766), which requires that pending disciplinary proceedings remain confidential ex-

cept in certain enumerated circumstances. Because use of a member of the Administrator's staff to serve process does not conflict with Rule 765, we must reject respondent's argument.

Respondent next contends that the Hearing Board violated ARDC Rule 8.1 (Dis. Com. R. 8.1 (now Dis. Com. R. 271 (1988))), by not holding his hearing within 90 days of the service of the complaint as specified by the Commission's rule. Again, respondent makes no claim that he was prejudiced by any violation of the rule.

In *In re Mitan* (1979), 75 Ill. 2d 118, 125, this court held that the hearing panel could properly dismiss a complaint without prejudice to refiling where a hearing had not been held within the 90-day period of Rule 8.1. In so holding, we stated that Rule 8.1 is not a mandatory time limitation, but a procedural rule directing the Administrator to conduct orderly and timely proceedings. We further announced that the Commission's Rule 8.1 is not a limitation on this court's authority and that "failure to comply with [the rule] does not deprive this court or its agents of the right or the power to further consider the charges against the respondent." (*Mitan*, 75 Ill. 2d at 125.) Because *In re Mitan* controls this issue, we find that respondent's argument is without merit.

Before addressing respondent's next argument, however, we note that much of the delay in this case resulted from the extensive discovery sought by respondent. While we recognize respondent's right to seek discovery (Dis. Com. R. 6.1 (now Dis. Com. R. 251 (1988))), we do not believe that he may subsequently complain of the delay he has caused by his exercise of that right. Finally, we point out that, although respondent now complains of a nine-month hiatus in the proceedings, the record fails to disclose any similar objection made by respondent at the time. Under these circum-

stances, we must conclude that respondent's conduct was, in part, responsible for the delay.

Respondent next argues that the Hearing Board panel improperly excluded certain testimony of various witnesses. First, respondent contends that the panel wrongfully restricted his attempted impeachment of Janet Wiswald by limiting his questioning of Wiswald and other witnesses. Although respondent has not developed this point with argument, we have, nevertheless, examined each instance of restricted examination mentioned by respondent and find no error. The various instances cited by respondent where the hearing panel sustained objections to his questions were, in general, occasions where respondent attempted to elicit information that was either irrelevant, cumulative, or lacking in foundation and, as to which, it was proper for the panel to sustain the Administrator's objections.

Respondent also claims that he was improperly limited in his examination of Thomas Diver, one of two attorneys who represented Wiswald in the partition suit filed by Vole. During his questioning of Diver, respondent attempted to elicit information which the hearing panel determined fell within the scope of the attorney-client privilege. Respondent does not contend that the information he sought to elicit was unprivileged. Instead, respondent argues that the Administrator was estopped from raising objections based on the attorney-client privilege because the Administrator had asked, and Diver had answered, similar questions during Diver's deposition.

We likewise find this claim of respondent to be without merit. Respondent's argument overlooks the fact that the attorney-client privilege belongs to the client (*People ex rel. Shufeldt v. Barker* (1870), 56 Ill. 299, 301) and not to the Administrator. Wiswald was asked whether she wished to waive the privilege, and she

stated on the record that she did not. Thus, Diver's testimony concerning his privileged communications with his client was excluded not because the Administrator objected to the testimony, but because Wiswald affirmatively asserted the privilege. Under these circumstances, we conclude that the Hearing Board panel acted correctly in limiting respondent's examination of Diver.

Respondent further contends that the Hearing Board's finding of misconduct was not sufficiently supported by the evidence. Respondent asserts that Wiswald's testimony concerning the August 18, 1983, telephone call was not clear and convincing evidence that she had instructed him not to record the quitclaim deed held in escrow. Respondent reasons that, because the Hearing Board rejected certain aspects of Wiswald's testimony, her testimony about the phone call is insufficient to prove misconduct.

In attorney disciplinary proceedings, misconduct must be proved by clear and convincing evidence. (107 Ill. 2d R. 753(c)(6).) Because the Hearing Board panel is able to see and hear the witnesses, we defer to its assessment of the witnesses' credibility and the weight to be given their testimony. (*In re Taylor* (1977), 66 Ill. 2d 567, 572.) In this case, the panel heard both Wiswald and respondent testify as to the content of the August 18 telephone call. In its findings of fact, the panel rejected respondent's version of the phone conversation, stating that his testimony lacked credibility. The panel then accepted Wiswald's version of the same conversation, finding that she had instructed respondent not to record the deed. This finding is supported not only by Wiswald's testimony, but also by that of her mother. Moreover, the credibility of respondent's version of events was put into question by Vole's denial that he received a telephone call from respondent. We therefore accept the Hearing Board's finding on this contested question of fact.

Furthermore, we believe that the Hearing and Review Boards' conclusion that respondent's actions constituted professional misconduct is supported by the facts of this case. The record indicates that respondent agreed to act as Wiswald's attorney in her purchase of Hoffelt's interest in the former marital home. Wiswald then received $7,000 from Vole, her boyfriend and respondent's friend, for this purpose. While engaged to Vole, Wiswald authorized respondent to insert Vole's name to the quitclaim deed that respondent held in escrow. The relationship between Wiswald and Vole subsequently deteriorated, and Vole sought a way to recover the $7,000 he had transferred to Wiswald. While Wiswald was vacationing in Arkansas, Vole attempted to pay off Wiswald's debt to Hoffelt, and to have the deed naming him as joint tenant of the property recorded. To this end, Vole delivered a check to Hoffelt's attorney for the sum Vole believed was still owing under the escrow agreement, even though this money was not yet due. When Wiswald learned of Vole's actions, she placed a long-distance, nighttime telephone call to respondent at his home, expressing her concern over Vole's behavior and instructing respondent to do nothing about the house until she returned. Respondent then called Vole and, the following day, Vole directed respondent to record the deed. Disregarding his client's wishes, respondent immediately responded to Vole's request and recorded the deed without first ascertaining from Hoffelt or Wiswald whether the terms of their agreement had been fulfilled. Several days later, after Wiswald ejected Vole from the house, Vole consulted respondent, inquiring what legal remedies were then available to him. Respondent advised Vole that a partition suit was possible and then referred Vole to another attorney. Wiswald, who was never told by respondent that the deed had

been recorded, first learned about the recordation when she was sued by Vole for partition of the property.

Thus, while respondent, as Wiswald's attorney, was purportedly acting to further her interests, he, in fact, disregarded her instructions and acted to protect the interests of Vole. Respondent thereby engaged in conduct involving misrepresentation in violation of Rule 1—102(a)(4), failed to represent his client with undivided loyalty in violation of Rule 5—107(a), and failed to seek the lawful objectives of his client in violation of Rule 7—101(a)(1). Moreover, because of respondent's actions, Wiswald was required to retain counsel and to defend herself in a partition suit against the joint tenancy deed. Therefore, respondent also caused prejudice to his client in violation of Rule 7—101(a)(3).

Next, respondent argues that, as structured, the attorney discipline system in Illinois does not conform with the requirements of due process. Respondent claims that, because discipline may be increased if an attorney files exceptions to reprimands proposed by the Hearing or Review Boards, the attorney's right to seek review of the Boards' determinations is impermissibly chilled. Respondent points out that under ARDC Rules 282 and 312 (Dis. Com. Rules 282, 312 (1988)), the Hearing Board and Review Board may propose reprimands in lieu of recommending more severe sanctions to this court. If neither the Administrator nor the attorney-respondent files exceptions, reprimands become final. However, if either the Administrator or the attorney files exceptions to a proposed reprimand, the potential exists for increased sanctions, such as suspension or disbarment. Therefore, according to respondent, an attorney who must choose between accepting a reprimand and risking increased discipline may be deterred from exercising his right to review. By analogizing to criminal procedure and relying on *North Carolina v. Pearce* (1969), 395

U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, respondent concludes that attorney disciplinary procedures which allow for enhanced discipline on review are constitutionally impermissible and violate due process.

Initially, we question respondent's standing to raise this issue. In this case, neither the Hearing Board nor the Review Board proposed that respondent be reprimanded. Instead, both bodies recommended that respondent be suspended from the practice of law for six months. Because both Boards recommended a suspension rather than a reprimand, it was inevitable that respondent's case would come before this court, as either a contested or an uncontested matter, before discipline was imposed. (See 107 Ill. 2d R. 753(e).) Thus, respondent never had to choose between accepting a reprimand and seeking review in this court. Because respondent was never confronted with the dilemma which he contends violates due process, we fail to see how he has standing to raise the issue here.

Assuming, *arguendo*, that respondent has standing, his reliance on *Pearce* is misplaced and, consequently, his argument fails. In *Pearce*, 395 U.S. at 726, 23 L. Ed. 2d at 670, 89 S. Ct. at 2081, the Supreme Court held that following a successful appeal and reconviction, the trial judge may not impose a greater sentence than was imposed at the first trial, unless the judge affirmatively indicates that the greater sentence is based on conduct occurring after the time of the original sentencing. The Court stated that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." (*Pearce*, 395 U.S. at 725, 23 L. Ed. 2d at 669, 89 S. Ct. at 2080.) Thus, contrary to respondent's contention, the Court's concern was not that a defendant might be deterred from exercising his appellate rights by the possibility of a harsher sentence, but rather that the trial

judge might unfairly punish a defendant for lawfully attacking his conviction. See *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 363, 54 L. Ed. 2d 604, 610, 98 S. Ct. 663, 667-68; *Chaffin v. Stynchcombe* (1973), 412 U.S. 17, 29, 36 L. Ed. 2d 714, 725, 93 S. Ct. 1977, 1984.

Respondent has not suggested any reason why the disciplinary procedures in effect might cause this court to act unfairly when sanctioning attorneys. Nor do we believe such a danger exists under the present system. Because this court establishes the procedures to be followed in disciplinary cases, we have no reason to penalize an attorney for following the procedures that we have adopted. We believe the due process considerations that motivated the opinion in *Pearce* have no application to our disciplinary procedures, and we, therefore, reject respondent's argument.

Finally, respondent contends that the six-month suspension recommended by the Hearing and Review Boards is excessive. In attorney disciplinary proceedings, this court strives for uniformity in the imposition of sanctions while recognizing that each case presents a unique factual situation and must be judged on its own merits. (*In re Gordon* (1988), 122 Ill. 2d 540, 547.) While none of our prior decisions are identical to the present case, we believe *In re Dombrowski* (1978), 71 Ill. 2d 445, cited by the Administrator, is sufficiently analogous to provide some guidance as to the discipline appropriate here.

In *Dombrowski*, the attorney represented a client in a personal injury action. Initially, the client had agreed to a proposed settlement offer, but later, upon learning the amount she would receive after expenses were paid, instructed the attorney not to settle the claim. The attorney, however, disregarded his client's directions and settled the case against her wishes and without her knowledge. The attorney then failed to inform his client

of his actions in settling the claim. *Dombrowski*, 71 Ill. 2d at 447.

During the disciplinary proceedings, the attorney sought to explain his conduct by testifying that, over a year before he settled the claim, he had signed the client's name to a power of attorney without the client's knowledge. (*Dombrowski*, 71 Ill. 2d at 448.) According to the attorney, at the time he settled the claim, he had forgotten that the power of attorney on file was invalid, and, consequently, he mistakenly believed that he had authority to settle the case. *Dombrowski*, 71 Ill. 2d at 449.

The court in *Dombrowski* rejected this argument and found the attorney had engaged in professional misconduct by disregarding his client's instructions. The court condemned the attorney's reliance on the forged power of attorney as authority for his actions, concluding that signing the document without his client's consent was, in itself, an ethical violation. (*Dombrowski*, 71 Ill. 2d at 450-51.) Moreover, the court stated that even if the power of attorney had been valid, it would not permit the attorney to act contrary to his client's express instructions. (*Dombrowski*, 71 Ill. 2d at 450.) Additionally, the court pointed out that alternative courses of action were available which would have protected the client's interests. (*Dombrowski*, 71 Ill. 2d at 451.) The court then suspended the attorney for a period of one year. *Dombrowski*, 71 Ill. 2d at 453.

Similarly, in the present case, respondent chose to act directly against Wiswald's directions by recording the deed he held in escrow. Furthermore, he argues before this court that his misconduct is somehow mitigated by his mistaken belief that the terms of the escrow agreement had been fulfilled and that he therefore erroneously thought he had authority, pursuant to the court order, to record the deed. Respondent, however, concedes that he breached his escrow duties by recording the deed

prior to Hoffelt's receipt of the entire $10,000 owed him. As in *Dombrowski*, we find it inappropriate that respondent should attempt to mitigate one ethical violation by relying on another. Moreover, as respondent himself admitted before the hearing panel, even if the terms of the escrow agreement had been fulfilled, he need not have recorded the deed. Alternatives were available which would have permitted him to comply with his client's wishes.

We do not believe, however, that the circumstances of this case require that respondent be suspended for one year as in *Dombrowski*. In determining the appropriate discipline required in any given case, we must consider the purposes underlying our disciplinary process. (See *In re Saladino* (1978), 71 Ill. 2d 263, 275.) These purposes are to safeguard the public and to maintain the integrity of the legal profession. (*In re Levin* (1979), 77 Ill. 2d 205, 211.) In mitigation, respondent offered the testimony of three character witnesses, including two judges, who attested to respondent's excellent reputation for honesty and professional integrity. Similarly, both of Wiswald's attorneys in the partition suit testified that they had never heard anything negative about the respondent's reputation. Moreover, in 17 years of practice, this was the first complaint respondent had been required to answer before the Hearing Board. Finally, respondent testified that he engaged in *pro bono* activities by contributing valuable services to various religious organizations. Under these circumstances, we believe it appropriate that respondent be suspended from the practice of law for six months.

*Respondent suspended.*

MORAN, C.J., and STAMOS, J., took no part in the consideration or decision of this case.