In the Matter of the Application for Disciplinary Action Against Cheryl L. ELLIS, a Member of the Bar of the State of North Dakota.

### DISCIPLINARY BOARD OF the SUPREME COURT of the State of North Dakota, Petitioner,

*v.*

### Cheryl L. ELLIS, Respondent.

### Civ. No. 920375.

Supreme Court of North Dakota.

Aug. 10, 1993.

**560**

Vivian Elaine Berg, Disciplinary Counsel, Bismarck, for petitioner.

Cheryl Leslie Ellis, pro se.

PER CURIAM.

This is a disciplinary proceeding against Cheryl L. Ellis, a Fargo attorney, arising out of her representation of Linnea Andreasen, James C. Bakeman and Esther Hartman. We order that Ellis be suspended from the practice of law for a period of six months, that she write and achieve a score of at least 80 on the Multistate Professional Responsibility Examination (MPRE), and that she pay costs of $2,782.15 and attorney fees of $1,482.50.

We review disciplinary proceedings against attorneys *de novo* on the record, according due weight to the findings, conclusions and recommendations of the hearing panel. *Disciplinary Board v. Ellis*, 439 N.W.2d 808 (N.D.1989). We do not rubber stamp the findings and recommendations of the Disciplinary Board. *Id.* The standard of proof is clear and convincing evidence. *Id.;* Rule 3.5, NDPRLDD. "In determining what discipline is warranted, each case must be decided on its own particular facts." *Ellis, supra,* 439 N.W.2d at 809.

The hearing panel found that Ellis represented Andreasen in a Clay County, Minnesota, divorce action which was tried in September 1989, with a judgment being entered on November 9, 1989. Ellis met with Andreasen and Bakeman on December 3, 1989, informed Andreasen for the first time that judgment had been entered in the divorce action, and discussed issues for appeal and a motion hearing scheduled for January 29, 1990. At the December 3 meeting, Ellis presented Andreasen with a statement of charges reflecting a balance due of $6,591. Ellis had Andreasen sign an assignment and agreement indicating that Andreasen owed $6,389.80 in legal fees and costs to Ellis, authorizing the First State Bank of Audubon to disburse funds to Ellis in payment of legal fees, and providing that the bank would be repaid out of the

proceeds of Andreasen's divorce judgment. When the bank would not provide Ellis all of the funds she sought, Ellis had Andreasen sign a second agreement, which falsely indicated that Andreasen owed Ellis legal fees and costs of $11,489 as of December 6, 1989. The agreement recited that Ellis wished to borrow $4,000 from the bank, with the loan to be secured by an assignment of the proceeds of Andreasen's divorce judgment, and provided that Ellis agreed to discount Andreasen's bill to $9,403. Ellis borrowed the $4,000, the bank was repaid with interest, and Ellis never billed Andreasen for the additional amounts reflected in the second agreement. The panel also found that Ellis misled Andreasen and, apparently, the court about certain hearing dates on motions, and that she failed to respond to messages left on her answering machine and failed to apprise Andreasen of amendments to her divorce decree.

The hearing panel also found:

### "VII

"Ellis undertook to represent James C. Bakeman (husband of Linnea Bakeman, formerly Linnea Andreasen) in connection with at least three (3) matters, including a Reciprocal Child Support Enforcement action in Stearns County, Minnesota, and was to file certain motions to vacate or amend an order which had been entered in the Stearns County, Minnesota action. Ms. Ellis undertook the representation knowing that she was not licensed to practice in Minnesota and she did indicate to Mr. Bakeman that payment of a back bill in the amount of approximately four hundred dollars, plus filing fee of $75, was required as a prerequisite to filing the appeal. Mr. Bakeman forwarded the necessary funds in the amount of $475 by Federal Express; however, the appeal or proceeding was not undertaken.

### "VIII

"At a meeting of Ellis and Mr. and Mrs. Bakeman on December 3, 1989, at Alexandria, Minnesota, at which time Ellis was representing Mr. Bakeman, he turned over to her a personal file containing records, with the idea in mind that Ellis would make copies and return the files to Bakeman.... Subsequently, through personal telephone contact and messages left on her answering machine, Mr. Bakeman did request on more than one occasion that she return his files. Ellis indicated to him that they had been returned and on another occasion indicated that they had been sent to him from Detroit Lakes. Ellis indicated that she was going to put a tracer through the postal service to check on the package referred to; however, it appears that no tracer had ever been put through.

### "IX

"Ellis undertook to represent Esther Hartman (mother of Linnea Bakeman, formerly Linnea Andreasen) in connection with an investment or investments which had proven to be unsound. Ellis obtained Esther Hartman's file containing quarterly reports, copies of promissory notes and matters pertaining to the investment(s). Ellis was requested to return the file by telephone and letter and the files were returned to Mrs. Hartman after about ten or eleven months....

### "X

"Ellis has violated one or more of the following provisions of the Rules of Professional Conduct:

"RULE 1.1 COMPETENCE. A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

"RULE 1.15 SAFEKEEPING PROPERTY, which requires that a lawyer shall safeguard a client's property and at subparagraph (a) provides that 'other property shall be identified as such and appropriately safeguarded ...'

"RULE 1.3. DILIGENCE. A lawyer shall act with reasonable diligence and promptness in representing a client.

"RULE 1.4. COMMUNICATION.

"(a) A lawyer shall make reasonable efforts to keep a client reasonably informed about the status of a matter. A lawyer shall promptly comply with a client's resonable [sic] requests for information.

"(b) A lawyer shall explain matters related to the representation to the extent reasonably necessary to permit the client to make informed decisions.

"RULE 3.3. CANDOR TOWARD THE TRIBUNAL.

"(a) A lawyer shall not:

"(1) Make a statement to a tribunal of fact or law that the lawyer knows to be false.

"RULE 5.5. UNAUTHORIZED PRACTICE OF LAW.

"A lawyer shall not:

"(a) Practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.

"Additionally, it appears that Ellis has violated Rule 1.2(A)(3), NDPRLDD, in that it is stated to be misconduct and grounds for disciplinary sanctions for a lawyer to 'engage in conduct involving dishonesty, fraud, deceit, or misrepresentation'."

The hearing panel recommended that Ellis be reprimanded[1] and that she be ordered to pay costs of $2,782.15 and attorney fees of $1,482.50. The Disciplinary Board adopted the hearing panel's findings and recommendations, with the exception of the hearing panel's finding of unauthorized practice of law.

Ellis argues that the hearing panel's report was untimely. Rule 3.1(D)(4), NDPRLDD, provides, in part: "The hearing body shall in every case submit to the board within 60 days after the conclusion of its hearing a report containing its finding and recommendations, together with a record of its proceedings." However, Rule 3.5(I), NDPRLDD, provides:

"Except as is otherwise provided in these rules, time is directory and not jurisdictional. Failure to observe prescribed time intervals may result in sanctions against the violator but does not abate any proceeding."

Ellis's argument is without merit.

Ellis points out that the hearing panel's report is signed by only two of the three members of the panel. Our Procedural Rules for Lawyer Disability and Discipline fail to address this point. They do, however, provide that the Disciplinary Board itself may act with the concurrence of a majority, Rule 2.1(E), NDPRLDD, and they do not set forth any greater requirement for the Board's hearing bodies, nor do they require that all members of a hearing panel sign a report. We therefore determine that a report signed by two of the three panel members is sufficient.[2]

Ellis was not served with a subpoena or notice before an Inquiry Committee East hearing was held. That hearing was followed by formal proceedings and a hearing by the three-member panel involved here. Ellis asserts that she was denied her due process right to appear. An attorney subjected to disbarment proceedings is "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968). In *State v. Rome*, 235 Kan. 642, 685 P.2d 290 (1984), a disciplined attorney alleged a due process

---

1. "Reprimand, also known as censure or public censure, is a form of public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice." Standard 2.4, NDSILS.

2. Nothing in the record before us indicates why the third panel member in this case may have failed or refused to sign the hearing body's report. When, as here, there is no other explanation, we will interpret the absence of the member's signature as a dissent from the report. We note, however, that it would be better practice, and more useful to the Disciplinary Board and this court, for a dissenting member to set forth his position and his reasoning explicitly.

violation when he was not questioned and allowed to provide an explanation in a preliminary investigation before proceedings were filed. Citing *Hannah v. Larche*, 363 U.S. 420, 446, 80 S.Ct. 1502, 1516, 4 L.Ed.2d 1307 (1960), the court held: "Individuals who are investigated by agencies and who will be 'accorded all the traditional judicial safeguards at a subsequent adjudicative proceeding,' cannot successfully complain that they were not given procedural due process." 685 P.2d at 291, Syllabus ¶ 3. Ellis alleges that if she had been at the Inquiry Committee East hearing, "it would have been apparent" that Mrs. Hartman had forgotten about a telephone conversation they had had, and Hartman's "telephone records for the time in question could have then been subpoenaed." Ellis has not suggested how such a subpoena would have improved her position. Ellis's due process argument is without merit.

■ Ellis alleges that before the hearing began, disciplinary counsel refused to allow an attorney, who had previously represented Andreasen and was a witness at the hearing, to assist Ellis at the hearing. Ellis asserts that this was a denial of counsel. Ellis did not raise this as an issue at the hearing. We will not address an issue raised for the first time on review.

■ Ellis contends that she was denied the right of examining into the character of the complainant Andreasen through examination of Andreasen's former attorney. Where, as here, the attorney-client privilege had not been waived, a restriction on examination of the attorney was appropriate. *In re Tepper*, 126 Ill.2d 109, 127 Ill. Dec. 756, 533 N.E.2d 838 (1988).

■ From our review of the record, we conclude that there is clear and convincing evidence to support the panel's findings that Ellis violated provisions of the North Dakota Rules of Professional Conduct. There is clear and convincing evidence that Ellis involved a client, Andreasen, in the submission of false documentation of legal fees and costs to a bank in connection with a loan; that Ellis failed to proceed with an appeal on behalf of Bakeman after he had

provided her with the filing fee; failed to act diligently in representing a client; failed to safeguard and return client property; failed to keep a client informed or to comply with requests for information; and made a false statement to a court. Each of those violations caused Ellis's clients to suffer actual or potential harm.

From our review of the record, we conclude that there is not clear and convincing evidence to support the panel's finding that Ellis violated Rule 1.1, NDRPC, which requires a lawyer to "provide competent representation to a client." The rule requires "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." What is addressed by Rule 1.1, NDRPC, is clarified by reference to Standards 4.51 through 4.54, NDSILS, relating to lack of competence. Standard 4.51 addresses a lawyer's failure to "understand the most fundamental legal doctrines or procedures." Standard 4.52 addresses a lawyer who "engages in an area of practice in which the lawyer knows he or she is not competent." Standard 4.53 addresses a lawyer's "failure to understand relevant legal doctrines" or a lawyer's negligence "in determining whether he or she is competent to handle a legal matter." Standard 4.54 addresses a lawyer's "isolated instance of negligence in determining whether he or she is competent to handle a legal matter." We are not persuaded that Ellis lacked the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation" she provided the complainants. The record does not contain clear and convincing evidence that Ellis failed to understand the most fundamental legal doctrines or procedures, that Ellis engaged in an area of practice in which she knew she was not competent, that Ellis failed to understand relevant legal doctrines, or that she was negligent in determining whether she was competent to handle a legal matter. In our view, Ellis was not shown to have violated Rule 1.1, NDRPC, by clear and convincing evidence.

■ Regarding the panel's conclusion that Ellis committed unauthorized practice of law, Ellis is licensed to practice law in

North Dakota; she is not licensed to practice law in Minnesota. An applicable Minnesota court rule provides that a non-resident attorney may participate in a Minnesota trial upon motion of a member of the Minnesota bar associated in the case. However, there is also evidence in the record that some courts in Minnesota border counties allow North Dakota attorneys to participate in Minnesota trials without a motion by a member of the Minnesota bar associated in the case if there is no objection. Thus, Ellis was able to represent Andreasen in her divorce action in Clay County without associating a Minnesota attorney on the case.

When Ellis attempted to represent Bakeman in seeking to vacate a judgment in a URESA action in Stearns County without associating a Minnesota attorney on the case, opposing counsel objected. Ellis did not associate with a Minnesota attorney on the case, could not further represent Bakeman in the case without doing so, did not further represent Bakeman in that action, and told Bakeman that he would have to retain a Minnesota attorney to represent him in that action. Ellis did not file an appeal that she had prepared. Once having undertaken to represent Bakeman in the matter, when Ellis learned she could not proceed without associating with Minnesota counsel, she should have done so in order to continue representing Bakeman or she should have assisted Bakeman in retaining local counsel. Ellis left Bakeman to fend for himself. Under the circumstances, Ellis should not have placed on Bakeman the responsibility of securing another attorney to represent him. We agree with the Disciplinary Board that Ellis was not shown by clear and convincing evidence to have engaged in unauthorized practice of law. We believe that Ellis's action in this regard was a failure to act with reasonable diligence in representing a client.

Rule 1.3, N.D. Rules of Professional Conduct, requires a lawyer to act with reasonable diligence and promptness. Standards 4.42 and 4.43, N.D. Standards for Imposing Lawyer Sanctions, provide:

"4.42 Suspension is generally appropriate when:

"(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

"(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

"4.43 Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."

Rule 1.4, NDRPC, requires a lawyer to make reasonable efforts to keep a client reasonably informed, to promptly comply with requests for information, and to explain matters to the extent reasonably necessary. Standard 4.63, NDSILS, provides: "Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client."

Rule 1.15(a), NDRPC, requires that client funds be deposited in trust accounts and that other property be appropriately safeguarded. Rule 1.15(b), NDRPC, provides that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive." Standards 4.12 and 4.13, NDSILS, provide:

"4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

"4.13 Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."

Rule 3.3, NDRPC, provides: "A lawyer shall not: (1) Make a statement to a tribunal of fact or law that the lawyer knows to be false." Standard 6.12, NDSILS, provides: "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court." Standard 6.13, NDSILS, provides: "Reprimand is generally appropriate when

a lawyer is negligent ... in determining whether statements or documents are false."

Rule 1.2(A)(3), NDPRLDD, provides: "It is misconduct and grounds for disciplinary sanctions for a lawyer to: ... (3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Standard 4.62, NDSILS, provides that suspension is generally appropriate when a lawyer knowingly directs fraud, deceit or misrepresentation to a client. Standard 5.12, NDSILS, provides that suspension is generally appropriate when a lawyer knowingly engages in dishonesty, fraud, deceit, or misrepresentation adversely reflecting on the lawyer's fitness to practice.

Standard 9.2, NDSILS, provides that the existence of prior disciplinary offenses is an aggravating factor that may justify an increase in the degree of discipline to be imposed. Ellis was previously disciplined by this court. *See Disciplinary Board v. Ellis, supra.* Ellis was disciplined in that case for failing to communicate with clients about the status of their cases, misrepresentation, neglect, and lack of diligence. This court suspended Ellis from the practice of law for a two-year period, with all but the first 90 days stayed for a one-year probationary period.

Some of the violations involved in this proceeding are of the same nature as those for which Ellis was previously suspended. In our view, the Disciplinary Board's recommendation that Ellis only be reprimanded unduly depreciates the seriousness of Ellis's commission of new violations similar to those for which she previously had been disciplined.

We believe suspension from the practice of law is appropriate in this case. We hereby impose upon Ellis a six month suspension from the practice of law commencing September 1, 1993, order that she write and achieve a score of at least 80[3] on the Multistate Professional Responsibility Examination (MPRE) and order her to pay costs of $2,782.15 and attorney fees of $1,482.50.[4]

VANDE WALLE, C.J., and LEVINE, MESCHKE, NEUMANN and SANDSTROM, JJ., concur.

---

3. The North Dakota State Bar Board has established 80 as the minimum passing MPRE score for purposes of admission to practice law in this state.

4. *Compare Disciplinary Board v. Nassif,* 504 N.W.2d 311 (N.D.1993). The greater severity of the sanction imposed in the present case results from the greater severity of Ellis's prior disciplinary offenses, the seriousness of Ellis's having submitted a false document to obtain a loan, and the seriousness of Ellis's having involved a client in the submission of that false document.